Filed 2/27/13  Brown v. K Motors CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TODD BROWN, | D058704 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00085519-CU-BC-CTL) |
| K MOTORS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed in part; reversed in part; remanded for further proceedings.

I.

INTRODUCTION

In May 2008, Todd Brown purchased a used vehicle, a 2004 Toyota 4Runner, (4Runner) from K Motors, Inc. (Toyota of El Cajon).[1]  In March 2009, Brown filed this action against Toyota of El Cajon alleging six causes of action: violation of the Car

---

[1]    K Motors, Inc. is apparently the legal name of the car dealership.

Buyer's Bill of Rights (Veh. Code, § 11713.18)[2] (first cause of action); violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et. seq.) (second cause of action); negligence (third cause of action); breach of contract (fourth cause of action); unjust enrichment (fifth cause of action); and violation of the Song-Beverly Consumer Warranty Act (Song-Beverly) (Civ. Code, § 1790 et seq.) (sixth cause of action).[3]

During a jury trial, after Brown had rested his case, subject to the admission of his exhibits, Toyota of El Cajon filed a motion for nonsuit as to each of Brown's six causes of action. The trial court granted the motion as to the first five causes of action in Brown's complaint, but denied the motion as to Brown's Song-Beverly claim. The jury subsequently returned a verdict in favor of Toyota of El Cajon on the remaining Song-Beverly claim and the trial court entered a judgment in favor of Toyota of El Cajon. After denying Brown's motion to tax costs, the court entered a cost award in favor of Toyota of El Cajon as the prevailing party, pursuant to Code of Civil Procedure section 998.[4]

---

[2]    Unless otherwise specified, all subsequent statutory references are to the Vehicle Code.

[3]    Brown also sued the manufacturer of the 4Runner, Toyota Motors Sales, U.S.A. (Toyota Motors). Toyota Motors is not a party to this appeal.

[4]    The court entered the judgment on September 8, 2010. The court entered a second judgment, awarding costs to Toyota of El Cajon on January 4, 2011. We construe the January 4, 2011 judgment as an appealable postjudgment order awarding costs. Brown timely appealed from the underlying September 8 judgment and timely filed an amended appeal from the January 4 postjudgment order.

On appeal, Brown contends that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to the first five causes of action in his complaint. Brown also claims that there is not substantial evidence in the record to support the jury's verdict on his Song-Beverly claim, and that the court erred in awarding costs to Toyota of El Cajon as the prevailing party.

We conclude that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to Brown's claims for violation of the Car Buyer's Bill of Rights (first cause of action) and the CLRA (second cause of action). We further conclude that Brown has not demonstrated reversible error with respect to any of his other causes of action. In light of our partial reversal of the judgment in favor of Toyota of El Cajon, we also reverse the trial court's award of costs to Toyota of El Cajon as a prevailing party under Code of Civil Procedure section 998.

Accordingly, we reverse the judgment in part and reverse the order granting the motion for nonsuit in part; we affirm the judgment in part and affirm the order granting the motion for nonsuit in part; we reverse the order awarding costs, and remand the matter for further proceedings.

II.

FACTUAL BACKGROUND

In May 2008, Brown purchased a 4Runner from Toyota of El Cajon. At the time of purchase, Toyota of El Cajon informed Brown that the 4Runner was a "certified" used vehicle, and presented Brown with a report indicating that the vehicle had passed a 160-point vehicle inspection. Among the items on the checklist was a statement indicating

3

that the brake pads on the vehicle had at least 50 percent of their wear remaining.  At the time Brown purchased the 4Runner, he also purchased an extended warranty on the vehicle.

In the months after he purchased the 4Runner, Brown brought the vehicle back to Toyota of El Cajon on several occasions, complaining that the brakes were not functioning properly.  In March 2009, Brown filed this action.

III.

DISCUSSION

A.    *The trial court erred in granting Toyota of El Cajon's motion for nonsuit with respect to Brown's claims under the Car Buyer's Bill of Rights and the CLRA*

Brown claims that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to his claims under the Car Buyer's Bill of Rights and the CLRA.

1.    *Governing law*

a.    *The law applicable to nonsuits in general*

In *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347, the Supreme Court outlined the law that governs a trial court's consideration of a motion for nonsuit and the standard of review to be applied in reviewing a judgment of nonsuit:

> "In reviewing a judgment of nonsuit, 'we must view the facts in the light most favorable to the plaintiff. "[C]ourts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper.  The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.]  [¶]  In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses.  Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.  The court must give 'to

4

the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor. . . .' [Citation.] The same rule applies on appeal from the grant of a nonsuit. [Citation.] [Citation.]."

      b.    *Relevant provisions of the Car Buyer's Bill of Rights and the CLRA*

Section 11713.18[5] provides in relevant part:

"(a) It is a violation of this code for the holder of any dealer's license issued under this article to advertise for sale or sell a used vehicle as 'certified' or use any similar descriptive term in the advertisement or the sale of a used vehicle that implies the vehicle has been certified to meet the terms of a used vehicle certification program if any of the following apply:

"[¶] . . . [¶]

"(9) The term 'certified' or any similar descriptive term is used in any manner that is untrue or misleading or that would cause any advertisement to be in violation of subdivision (a) of Section 11713 of this code or Section 17200 or 17500 of the Business and Professions Code.

"(b) A violation of this section is actionable under the Consumers Legal Remedies Act (Title 1.5 (commencing with Section 1750) of Part 4 of Division 3 of the Civil Code . . . ."

    2.    *Relevant evidence offered at trial*

As noted in part II., *ante*, Brown presented evidence that prior to his purchase of the 4Runner, Toyota of El Cajon represented that the vehicle was a "certified" used vehicle, and presented him with a checklist that stated that the vehicle had passed a 160-

---

5    Section 11713.18 was enacted in 2006 as a part of the "Car Buyer's Bill of Rights." (Assem. Bill No. 68 (2005-2006 Reg. Sess.) § 1(a).)

point inspection.[6]  Among other representations, the checklist indicated that the vehicle had met the following standard:  "Brake pads/shoes must have minimum of 50% wear remaining."  Brown also presented expert testimony that in order to meet this standard for the 4Runner, the brake pads were required to measure five millimeters in width.

Brown also offered in evidence a March 2008 inspection report (exhibit 12) conducted by Toyota of El Cajon on the 4Runner when the vehicle had 59,546 miles.[7] With respect to the brakes, the report contains a section that states in typed print, "Rear ____ mm."  On the line between "Rear" and "mm," is a handwritten notation that appears to be the numeral "2," but which could arguably be viewed as a "7."

---

[6]    There is a lack of clarity in the record as to whether the various documentary exhibits referred to in this section were actually offered in evidence at trial.  The reporter's transcript indicates that only two exhibits were offered in evidence at trial. However, the amended joint exhibit list indicates that all of the exhibits referred to in this section were offered in evidence on the day before the jury returned its verdict, and there was extensive testimony concerning the exhibits offered at trial.  Further, the exhibits are all contained in the record on appeal, both parties have referred to the exhibits in their briefs on appeal, and neither party has suggested that any of the exhibits were excluded. In addition, when Brown's counsel rested his case, he did so "[s]ubject to the entry of [his exhibits]."  Thus, although the reporter's transcript indicates that only two exhibits were offered in evidence during the entire trial (neither of which are referred to in this opinion), we assume for purposes of this decision that all of the exhibits referred to in this section were in fact offered in evidence.

In any event, whether the exhibits were admitted in evidence is immaterial because we are reviewing the trial court's order partially granting Toyota of El Cajon's motion for nonsuit.  The trial court's order granting the partial nonsuit was entered *prior* to the conclusion of the trial.  Under these circumstances, we may affirm the judgment only if it is clear that Brown *would* not have been able to offer evidence sufficient to support a judgment in his favor.  (See *Willis v. Gordon* (1978) 20 Cal.3d 629, 633.) Thus, even assuming that the exhibits were not admitted, we assume that they *would* have been admitted, in considering the trial court's granting of a nonsuit.

[7]    Brown testified that he was not shown this report prior to his purchase of the 4Runner.

Brown also presented an October 2007 inspection report (exhibit 10) conducted by Longo Toyota[8] on the 4Runner when the vehicle had 58,959 miles—approximately 600 fewer miles than when Brown purchased the vehicle. That report indicates that at the time of that inspection, the rear brake pads measured three millimeters.

Finally, Katson testified that he conducted an inspection of the 4Runner and that it appeared to him that the rear brake pads had never been replaced.[9]

### 3. *Toyota of El Cajon's motion for nonsuit*

#### a. *Toyota of El Cajon's motion for nonsuit and Brown's opposition*

After Brown had presented his case subject to the entry of his exhibits, Toyota of El Cajon filed a motion for nonsuit as to each of Brown's six causes of action. With respect to Brown's cause of action under the Car Buyer's Bill of Rights, Toyota of El Cajon argued that Brown had failed to present any evidence that it had used the term "certified" in a misleading manner or that the vehicle that it sold to Brown did not qualify as a certified vehicle. Although not specifically discussed in its motion for nonsuit, Toyota of El Cajon did not dispute in the trial court, as it concedes in its brief on appeal, that "to qualify as a certified used vehicle under the Toyota Certified Program, the subject vehicle needed to have a minimum of [five] millimeters of brake pad when the vehicle

---

[8]  Brown's expert, Paul Katson, testified that Longo Toyota had previously owned the 4Runner and had "sen[t] it to the auction."

[9]  One can reasonably infer from Katson's testimony that Katson conducted this inspection at some point *after* Brown purchased the 4Runner.

7

was sold to Brown."  Toyota of El Cajon argued that Brown had offered no evidence

demonstrating that the 4Runner's rear brake pads failed to meet this standard:

> "BROWN offered no evidence that the brake pad measurement on Exhibit 12 as to the rear brake was a '2' and not a '7' other than his opinion as what the number was, which he is obviously not qualified to opine about.  The only other support other than his handwriting interpretation was that the [brake] measured a '3' back in October, 2007, when Longo Toyota measured the brakes, but there were obviously significant changes to the vehicle between October 2007 and March 2008 when [Toyota of El Cajon] acquired the vehicle. . . . Even by Mr. Katson's admission, brake pads do not 'grow' on their own, and he further admitted that [Toyota of El Cajon] did not put new brake pads on the rear.  Therefore, it is impossible for the measurement (even as evaluated as of Brown's case in chief) to have been a '2,' since several subsequent readings showed them consistently at '5.'  Brown offered no evidence at all that this vehicle was not properly certified . . . ."

With respect to Brown's CLRA claim, Toyota of El Cajon argued that there was

no evidence that Toyota of El Cajon had misrepresented that "the vehicle was eligible to

be sold as certified," when in fact it was not eligible for such certification.

In his opposition, Brown argued that he had presented evidence that Toyota of El

Cajon had violated section 11713.18, subdivision (a)(9) by stating that the 4Runner was

"certified" when the vehicle in fact failed to meet one of Toyota's guidelines for certified

vehicles.  Specifically, Brown contended that he had presented evidence that the

4Runner's rear brake pads measured two millimeters in May 2008, when he purchased

the vehicle from Toyota of El Cajon, and that the vehicle thus failed to meet the

applicable Toyota certification guideline that brake pads have a thickness of at least five

millimeters.

8

Brown contended that exhibit 12, Toyota of El Cajon's March 2008 inspection report, stated that the rear brake pads on the 4Runner had a thickness of two millimeters.[10]  Brown argued that exhibit 12 thus constituted evidence that Toyota of El Cajon had violated section 11713.18, subdivision (a)(9) by "sell[ing] the [v]ehicle as certified when it did not meet the specified criteria that . . . brake pads must have at least 50 [percent] wear remaining."

Brown also argued that the October 2007 inspection by Longo Toyota indicated that the rear brake pads had a thickness of three millimeters at that time, and that there was evidence that the 4Runner still had its original rear brake pads at the time of the May 2008 sale to Brown.[11]  Brown argued that this evidence supported the inference that the rear brake pads were less than five millimeters at the time Toyota of El Cajon sold the 4Runner to Brown.

Brown further claimed that Toyota of El Cajon's misrepresentation as to the "certified" nature of the vehicle was actionable under the CLRA.  (See § 11713.18, subd. (b) [making a violation of section 11713.18 actionable pursuant to the CLRA].)

b.    *The trial court's ruling*

The trial court held a hearing on the motion for nonsuit.  After hearing argument from counsel, the court granted the motion as to all of Brown's causes of action, with the

---

[10]    It is undisputed that Toyota of El Cajon did not replace the rear brake pads at any time.

[11]    Although not specifically mentioned in his opposition, as noted above, Brown's expert testified that he had inspected the vehicle and that he believed that the rear brake pads had never been replaced.

9

exception of his claim pursuant to the Song-Beverly Consumer Warranty Act. With respect to Brown's claims under the Car Buyer's Bill of Rights and the CLRA, the court ruled:

> "[I]n viewing the documents in [the] light most favorable to the plaintiff, in this case, Mr. Brown, who is an extremely bright, cautious, and capable young man, I do not find that the plaintiff has presented sufficient evidence to meet . . . even the minimal standards of sending this to the jury on the first cause of action [under the Car Buyer's Bill of Rights]. [¶] The—and part of this not only has to do with the testimony of Mr. Brown, but it has to do with the testimony of his expert, who I found totally unbelievable. . . . [T]he expert was sloppy, unreliable, incredible, and unqualified.
>
> "[W]hen I look at the prove-up of the various facts, . . . I need to listen to what he says. And I view it within the context of how he believes that he is a professor. I have never heard anything like that in my entire life. So, to me, that . . . was a problem. [¶] I don't believe that it would be right or appropriate for the jury to deal with the first cause of action. So I am granting a nonsuit . . . on the first cause of action. [¶] As to the second cause of action, the [CLRA], I have viewed, in the light most favorable to plaintiff, the alleged deceptive practices or misrepresentations. I don't find that there is any basis to believe that there is any evidence of misrepresentations or deceptive practices . . . . And the [CLRA] is nonsuited."

After the trial court indicated its willingness to reconsider other parts of its ruling, the court heard further argument with respect to the evidence pertaining to the thickness of the brake pads. Brown's counsel argued in part:

> "[U]p on that screen is a document that says a two. They told him that it was going to have at least five or more. Now, . . . you . . . [are] not supposed to judge the credibility of Mr. Katson [Brown's expert] on a motion for nonsuit, not supposed to judge the credibility of anybody."

10

The court responded:

> "I listened to the testimony, and I don't think there's any dispute, other than Mr. Katson's interpretation of whether it's a two or a seven. I don't—there's no dispute that it's a seven. If it's a seven, that ends the . . . [certified] checklist issue, in my mind. [¶ . . . And the only person that interpreted that as a two is a man that's unqualified to interpret it as a two. That's Mr. Katson. . . . [¶] So I mean . . . if your case, in terms of the first two causes of action, turns on whether it's a two or seven, it's no question in this court's mind that the evidence before this jury is uncontested that it's a seven. And I don't think it should reasonably go to the jury if it's a seven."

After Brown's counsel argued that the court was erroneously deciding the factual question of whether the handwritten number on exhibit 12 was a two "as a matter of law," the trial court responded:

> "I'm not saying it's a two as a matter of law. I'm saying that's all that we have before us and that the only person that's interpreting it as a two before this court is Mr. Katson, who I . . . found totally incredible. And the person who wrote it said it was a seven.[12] Once you get it to be a seven, which is above the 50 percent on the standard for certified vehicles, . . . well, as I've ruled."

4.    *Application*

Brown contends that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to his claims pursuant to the Car Buyer's Bill of Rights and the CLRA on the ground that he failed to present any evidence that the rear brake pads measured less than five millimeters at the time Toyota of El Cajon sold him the vehicle. We agree.

---

12    A witness called by Toyota of El Cajon, Alfonso Eusebio, testified that he had drafted the portion of the March 2008 Toyota of El Cajon inspection report concerning the thickness of the rear brake pads on the 4Runner. Toyota of El Cajon's counsel asked Eusebio, "This number where it says 'rear' on the brake pad thickness measurement is what?" Eusebio responded, "Seven, sir."

11

To begin with, a reasonable jury could find that the March 2008 Toyota of El Cajon inspection report states that the rear brake pads measured two millimeters in thickness.[13]  Given that it is undisputed that Toyota of El Cajon never replaced the brake pads, a reasonable jury could find, based on this report alone, that the rear brake pads measured less than five millimeters at the time Toyota of El Cajon sold the vehicle to Brown in May 2008.  In addition, a reasonable jury could determine that this finding is corroborated by the combined effect of evidence that the original brake pads were still on the vehicle at the time of the May 2008 sale to Brown, and evidence that the October 2007 Longo Toyota inspection report stated that the brake pads were three millimeters in thickness at that time.

Viewing the evidence in the light most favorable to Brown as we must in reviewing a trial court's granting of a nonsuit (see *O'Neil v. Crane Co.*, *supra*, 53 Cal.4th at p. 347), Brown clearly presented evidence that is legally sufficient to support a finding that the rear brake pads measured less than five millimeters at the time Toyota of El Cajon sold him the vehicle.  This would not meet the applicable standard for certified vehicles.  In light of this evidence, a reasonable jury could have found that Toyota of El Cajon violated the Car Buyer's Bill of Rights by using the term "certified" in a misleading

---

[13]     Our conclusion that a reasonable jury could make such a finding is supported by the fact that Toyota of El Cajon's own expert initially interpreted the handwritten numeral on the March 2008 inspection report to be a "2."  At trial, Toyota of El Cajon's counsel asked James Daher, "And when you were originally asked [at a deposition] about the information regarding the brake pad thicknesses, . . . what did you say with respect to . . . the rear brake pad thickness?"  Daher responded, "At first glance, I thought that was a *two*." (Italics added.)

12

manner (§ 11713.18, subd. (a)(9)) and that the violation was actionable pursuant to the CLRA (§ 11713.18, subd. (b)).

The trial court's rationale for reaching a contrary conclusion is legally erroneous. To begin with, the trial court erred in basing its nonsuit ruling in part on the court's assessment that Brown's expert "was sloppy, unreliable, incredible, and unqualified." (See *O'Neil v. Crane Co.*, *supra*, 53 Cal.4th at p. 347 [" '[i]n determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses' [citation]"].) The court also erred in disregarding the March 2008 inspection report and the inferences that one could reasonably draw from the October 2007 inspection report. (*Ibid.* [in ruling on nonsuit " 'the evidence most favorable to plaintiff must be accepted as true' " and the court must " 'indulg[e] every legitimate inference which may be drawn from the evidence in plaintiff['s] favor' . . . [citation]"].) The court also erred in relying on the testimony of Eusebio, a *defense* witness, that the handwritten notation, which appears to be a "2," was in fact a "7." (*Ibid.* [" 'conflicting evidence must be disregarded' [citation]"].)

In its brief on appeal, Toyota of El Cajon does not dispute that in order to qualify as a certified vehicle under the Toyota Certified Program, a vehicle must have rear brake pads that measure at least five millimeters in thickness at the time the vehicle is sold. Toyota of El Cajon contends that Brown offered no evidence demonstrating that the rear brake pads measured less than five millimeters at the time Toyota of El Cajon sold the vehicle to Brown. We disagree, for the reasons stated above. In particular, we disagree with Toyota of El Cajon's contention that "Brown offered no admissible evidence in

13

opposition to Mr. Eusebio's testimony," to the effect that the handwritten numeral on the March 2008 inspection report is a "7," when the numeral on the document appears to be a "2." The March 2008 inspection report is itself evidence from which the jury could conclude that the number was a "2"; the jury was not required to credit Eusebio's testimony to the contrary.[14] We also reject Toyota of El Cajon's suggestion that it was "undisputed" that the rear brake pads were five millimeters in width on two occasions after the May 2008 sale.[15] While there was evidence that a Toyota of El Cajon employee *measured* the rear brake pads at five millimeters on two occasions after the sale, Brown hotly contested at trial whether these measurements were accurate. As noted above, a trial court may not grant a nonsuit based on a fact as to which there is conflicting evidence. (See *O'Neil v. Crane Co.*, *supra*, 53 Cal.4th at p. 347.)

Finally, we reject Toyota of El Cajon's contention that Brown suffered no prejudice as a result of the trial court's granting of a nonsuit on his Car Buyer's Bill of

---

[14] To the extent that Toyota of El Cajon intends to argue that Brown was required to offer expert testimony to counter Eusebios's testimony, we reject the argument. Toyota of El Cajon has not cited any authority, and we are not aware of any, that requires a party to submit expert testimony to prove the content of a handwritten document. Determining whether the numeral on the March 2008 report was a "2" or a "7" was a question the jury would have been fully competent to answer without the need for expert testimony. (See, e.g. *Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 762 [" ' "Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates" ' [citation]"].)

[15] In its brief, Toyota of El Cajon states, "There is no dispute [Toyota of El Cajon] never put new brakes on the vehicle . . . , and that on two occasions *after* Brown purchased the vehicle from [Toyota of El Cajon], he brought the vehicle in to [Toyota of El Cajon] for servicing and on each occasion the rear brake pads measured 5 millimeters. . . . As Brown's own expert conceded, brake pads don't 'grow' on their own."

14

Rights and CLRA claims, in view of the fact that the jury returned a verdict in Toyota of El Cajon's favor on Brown's Song-Beverly claim. The jury's verdict on Brown's Song-Beverly claim was based on the jury's finding that the 4Runner did not have a defect covered by Brown's warranty that "substantially impaired," the vehicle's use, value, or safety.[16] Neither warranty coverage nor substantial impairment is an element of Brown's causes of action under the Car Buyer's Bill of Rights or the CLRA. The jury's verdict in favor of Toyota of El Cajon on the Song-Beverly claim thus does not demonstrate that the jury would have reached a verdict in its favor on the Car Buyer's Bill of Rights and CLRA claims.

Accordingly, we conclude that the trial court committed reversible error in granting Toyota of El Cajon's motion for nonsuit on Brown's Car Buyer's Bill of Rights and CLRA claims.[17]

---

[16] In its special verdict in favor of Toyota of El Cajon on Brown's Song-Beverly claim, the jury found that Brown was given a written warranty, but answered "no" to the following question, "Did the Toyota 4Runner have a defect covered by the warranty which substantially impaired its use, value, or safety to a reasonable buyer in Mr. Brown's situation?"

[17] In light of our conclusion that the trial court erred in granting Toyota of El Cajon's motion for nonsuit because Brown presented legally sufficient evidence to support his Car Buyer's Bill of Rights and CLRA claims with respect to the rear brake pad theory of liability described in the text, we need not consider Brown's contentions as to his alternative theories of liability on these causes of action.

B.     *Brown has not established that the trial court committed reversible error with respect to any of his other claims*

Brown contends that the there is not substantial evidence to support the jury's verdict in favor of Toyota of El Cajon on his claim under the Song-Beverly Consumer Warranty Act.  Brown also contends that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to his claims for negligence, breach of contract and unjust enrichment.  We consider each contention in turn.

1.     *Brown's Song-Beverly Consumer Warranty Act claim*

In his opening brief, Brown argues, "The evidence (most favorable to plaintiff, accepted as true and disregarding conflicting evidence) supported Brown's claim for violation of the Song-Beverly Consumer Warranty Act."  Brown maintains that his testimony was "sufficient" to permit a jury's verdict in his favor on this claim.  Although it is not entirely clear from his opening brief, it appears that Brown is arguing that there is not substantial evidence in the record to support the jury's verdict in favor Toyota of El Cajon on his Song-Beverly Consumer Warranty Act claim.

An appellant who raises a substantial evidence claim on appeal must cite all of the evidence in the record in the light most favorable to the jury's verdict so as to permit a reviewing court to determine whether there is sufficient evidence to support the verdict. (E.g., *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  If an appellant fails to do so, the substantial evidence contention is forfeited.  (*Ibid*.)

As noted above, Brown argued in his opening brief that the evidence viewed in the light most "favorable to *plaintiff*" was "sufficient" to support a verdict in *his favor* on his

16

claim under the Song-Beverly Consumer Warranty Act. Brown failed to cite all, or even any, of the evidence that supports the jury's verdict in favor of Toyota of El Cajon. Nor did Brown attempt to show that there is not substantial evidence in the record to support the jury's verdict. Accordingly, Brown has failed to adequately raise a substantial evidence claim in his opening brief.[18]

In his *reply* brief, Brown contends, "There was not substantial evidence to support the jury's verdict with regard to the Song-Beverly Consumer Warranty Act." Brown has failed to provide any reason for his failure to adequately raise his substantial evidence claim in his opening brief. Accordingly, we conclude that Brown has forfeited his contention that there is not substantial evidence to support the jury's verdict on his Song-Beverly Consumer Warranty Act claim. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before . . . " ' [citation]"].)[19]

---

[18]    It is clear from the record that Brown's failure to properly raise a substantial evidence claim in his opening brief stems from the fact that Brown's appellate brief on his Song-Beverly Consumer Warranty Act claim is nearly identical to his opposition to Toyota of El Cajon's motion for nonsuit on this claim. However, as is discussed in the text, since Brown's burden on appeal is to demonstrate the lack of substantial evidence to support the jury's verdict, he may not carry that burden by citing to evidence sufficient to support a verdict in his favor.

[19]    In any event, even in his reply brief, Brown fails to cite *any* of the evidence that supports the jury's verdict in Toyota of El Cajon's favor on this claim. Further, in his reply brief Brown merely argues that he presented sufficient evidence to support a verdict in *his favor* without attempting to demonstrate, as is his burden, that the record lacks substantial evidence to support the jury's verdict in *Toyota of El Cajon's* favor.

2.    *Brown's negligence and breach of contract claims*

Brown contends that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to his negligence and breach of contract claims. We conclude that Brown has failed to carry his burden of demonstrating reversible error with respect to both claims.

a.    *Governing law*

In *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*), the court outlined the burden on an appellant to support its claims with reasoned argument:

> "It is a fundamental rule of appellate review that the judgment appealed from is presumed correct and ' " 'all intendments and presumptions are indulged in favor of its correctness.' " [Citation.]' [Citation.] An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]"

This same burden applies even to appellate claims that are subject to the de novo standard of review. " ' "[D]e novo review does not obligate us to cull the record for the benefit of the appellant . . . . As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . by citation to the record and any supporting authority. In other words, review is limited to issues which have been

18

adequately raised and briefed." ' [Citation.]"  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

        b.    *Application*

With respect to his negligence cause of action, Brown's complaint alleged the following:

> "Defendants had duties to Plaintiff regarding the sale of the Vehicle to Plaintiff.  [¶] . . .  Defendants failed to meet their duties to Plaintiff regarding the sale of the Vehicle to Plaintiff."

In his brief on appeal, Brown asserts that Toyota of El Cajon had duties to "reasonably and properly inspect the 4Runner and not conceal from Brown the fact that the 4Runner did not qualify as a Toyota certified used vehicle," and to "reasonably and properly inspect the Vehicle and find the R-DOT sticker[20] and reveal it to Brown," and to "reasonably attempt their repairs."  However, Brown cites no legal authority in support of any of these asserted duties.  Further, Brown fails to provide any record citation establishing that he asserted the existence of these duties at trial, and also fails to discuss either the grounds on which Toyota of El Cajon moved for nonsuit on this cause of action, or the basis on which the trial court granted the motion.  Under these circumstances, we conclude that Brown has failed to " ' "affirmatively demonstrate error . . . by citation to the record and any supporting authority" ' [citation]" (*Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 455), with respect to the trial court's granting of Toyota of El Cajon's motion for nonsuit on Brown's negligence cause of action.

---

20    Katson testified that an "R-Dot sticker" signifies that a part on the body of a vehicle has been replaced with a part meeting a manufacturer's "factory standards."

With respect to his breach of contract claim, Brown's legal argument does not contain a single citation to the record. For example, he fails to provide any citation to the contractual provision that he contends Toyota of El Cajon breached, and fails to identify any testimony supporting his claim of breach.[21] Under these circumstances, it is clear that Brown has failed to demonstrate any reversible error with respect to his breach of contract claim. (See *Benach, supra,* 149 Cal.App.4th at p. 852.)

Accordingly, we conclude that Brown has not demonstrated that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to Brown's negligence and breach of contract claims.

3.      *Brown's unjust enrichment claim*

Brown contends that the trial court erred in granting Toyota of El Cajon's motion for nonsuit as to his unjust enrichment claim.

"Although some California courts have suggested the existence of a separate cause of action for unjust enrichment (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593 [listing elements]), this court has . . . held that ' "[t]here is no cause of action in California for unjust enrichment." [Citations.] Unjust enrichment is synonymous with restitution. [Citation.]' (*Durell* [v. *Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370].)" (*Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1138.)

---

21      In his complaint, Brown alleged that Toyota of El Cajon breached a "vehicle purchase contract." However, in his brief on appeal, Brown does not cite to any provision of this contract, nor does Brown cite evidence demonstrating that Toyota of El Cajon breached this contract.

20

Accordingly, we conclude that the trial court did not err in granting Toyota of El Cajon's motion for nonsuit as to Brown's unjust enrichment claim.

C. *Because Toyota of El Cajon is no longer the prevailing party, we must reverse the trial court's costs award in its favor*

Brown contends that to the extent this court reverses the trial court's order granting Toyota of El Cajon's motion for nonsuit with respect to Brown's causes of action pursuant to the Car Buyer's Bill of Rights and the CLRA and the ensuing judgment, we must also reverse the trial court's award of costs to Toyota of El Cajon as a prevailing party under section 998. We agree. (See, e.g, *Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 620 ["In light of our conclusion that the judgment must be reversed as to the conversion cause of action, it no longer can be said that defendants are the prevailing parties. Accordingly, we must reverse the award of fees and costs . . . "]; *Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1436 ["Our reversal of the judgment in favor of defendants requires we vacate the . . . cost award in their favor"].) Accordingly, we reverse the trial court's costs award of costs to Toyota of El Cajon as a prevailing party under section 998. Upon the conclusion of the proceedings on remand, the trial court may reconsider the issue of prevailing party costs under section 998.

IV.

DISPOSITION

The trial court's September 8, 2010 judgment is reversed with respect to Brown's causes of action pursuant to the Car Buyer's Bill of Rights and the CLRA. The trial court's judgment is affirmed in all other respects.

21

The trial court's August 23, 2010 order granting Toyota of El Cajon's motion for nonsuit is reversed with respect to Brown's causes of action pursuant to the Car Buyer's Bill of Rights and the CLRA.  The court's order granting Toyota of El Cajon's motion for nonsuit is affirmed in all other respects.

The court's January 4, 2011 order awarding Toyota of El Cajon's costs is reversed. Parties shall bear their own costs on appeal.

_____

AARON, J.

WE CONCUR:

_____

BENKE, Acting P. J.

_____

McINTYRE, J.

22